UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN TRUCKING AND TRANSPORTATION INSURANCE COMPANY, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) 10 C 8021<br>)<br>) Judge George M. Marovich |
| ALLIED TUBE & CONDUIT CORPORATION, and TERRY MORRIS, | )<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

After defendant Terry Morris ("Morris") filed a state-court tort action against defendant Allied Tube & Conduit Corporation ("Allied"), Allied tendered its defense to plaintiff American Trucking and Transportation Insurance Company ("ATTIC"). ATTIC has filed this suit seeking a declaratory judgment that it has no duty to defend Allied.[1] Allied and ATTIC have filed cross motions for judgment on the pleadings. For the reasons set forth below, the Court grants ATTIC's motion and denies Allied's motion.

**I.     Background**

The following summary is based upon: (1) the facts alleged by plaintiff and admitted by defendant in the pleadings; and (2) the attachments to the pleadings. The parties agree on the facts.

---

[1] The Court has jurisdiction over this case, because the amount in controversy is greater than $75,000.00 and the parties are completely diverse. Plaintiff ATTIC is a citizen of Montana. Defendant Allied is a citizen of Delaware and of Illinois. Defendant Morris is a citizen of Michigan.

In the underlying suit, plaintiff Morris alleges that he was injured picking up a load of steel tubing from Allied in January 2007. At the time, Morris was employed by System Transport, Inc. ("System Transport") as a truck driver. On the day he was injured, Morris drove a truck owned by System Transport to Allied to pick up the steel tubing. The steel tubing was exposed to the elements and had oil and ice on it. After the steel tubing was loaded onto his truck, Morris attempted to put a tarp over the load. While doing so, Morris slipped, fell and severely injured his lower spine. In his complaint, Morris alleged that Allied "committed one or more" of the following acts of negligence:

    a.    Failed to have safe procedures in place for use in the loading and/or securing of their steel tubing onto trucks;

    b.    Failed to have proper equipment accessible for use by truck drivers, including Plaintiff TERRY MORRIS, in the loading and/or securing of their steel tubing for transport; and/or

    c.    Due to a lack of proper equipment, ALLIED forced truck divers [sic], such as TERRY MORRIS to climb on top of their steel tubing in an area exposed to the elements for the purpose of tarping their loads.

(Morris Complaint at 3). Morris is suing Allied for Allied's alleged negligence, not for System Transport's negligence.

At the time of Morris's injury, Allied was a subsidiary of Tyco International Ltd. ("Tyco"). Tyco had entered into a contract (which covered Allied, as Tyco's subsidiary) with System Transport to transport goods. Under that contract, System Transport was required to purchase "Comprehensive Auto Liability insurance" and "Comprehensive General Liability Insurance." The contract also required System Transport to name Tyco and its subsidiaries as "a named Additional Insured and Certificate Holder." System Transport procured a policy (policy ATTSTJ106) from plaintiff ATTIC (the "ATTIC Policy") for the relevant time period.

The ATTIC Policy was effective October 1, 2006 to October 1, 2007. The ATTIC Policy listed as "Named Insured(s)" the following: Trans-System, Inc., System Transport, Inc., T.W. Transport, Inc., Bulk Service Transport, Inc., Trans-System Logistics, LLC, and Driver Training & Solutions, LLC, Northwest Truck Leasing, LLC, Wil-Hunt Limited Partnership, Four-Way Leasing Company, LLC, Fleetway Leasing Company, LLC, TSI Investors, LLC, and Wil-Hal Limited Partnership. (ATTIC Policy at 2). In its "DEFINITIONS" section, the ATTIC Policy defined "Insured" as "(1) the Named Insured(s) for any Covered Trucking Unit; (2) the employees or agents of the Named Insured(s) while using or maintaining any Covered Trucking Unit under the authority of the Named Insured(s); and (3) anyone else while using with the Named Insured's permission any Covered Trucking Unit." (ATTIC Policy at 11).

ATTIC also issued an Additional Insured Endorsement for the ATTIC Policy. The endorsement names as Additional Insureds: "Tyco International (US) Inc. And Its Subsidiary and Affiliated Companies." The parties agree that Allied, as a Tyco subsidiary, is an Additional Named Insured. The Additional Insured Endorsement states:

> The above named Additional Insured(s) are included as insureds to the extent of the terms, conditions and exclusions of the applicable policy issued by ATTIC, RRG to the Named Insured and only to the extent the Additional Insured(s) are liable to others (and only to the extent of the actual liability) for the conduct of an insured under the applicable policy. The additional insured status of the above named Additional Insured(s) ceases when the Additional Insured(s) is no longer liable for the conduct of an insured or at the policy expiration date, whichever occurs first.

The parties disagree about the meaning of this language.

Allied tendered to ATTIC its defense of the Morris case, and ATTIC declined. ATTIC filed this declaratory judgment action, and both parties have moved for judgment on the pleadings. They agree on the facts but disagree about the meaning of the Additional Insured Endorsement.

## II. Standard on a Motion for Judgment on the Pleadings

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings at any time after the pleadings have closed. The pleadings include the complaint, answer and any documents attached thereto. Fed.R.Civ.P. 10(c).

A "motion for judgment on the pleadings may be granted only if the moving party clearly establishes that no material issue of fact remains to be resolved and that he or she is entitled to judgment as a matter of law." *National Fidelity Life Ins. Co.*, 811 F.2d 357, 358 (7th Cir. 1987); *Cambridge Healthcare LLC v. Infinity Home Services*, Case No. 10 C 7284, 2011 WL 2294196 at *2 (N.D. Ill. June 9, 2011).

## III. Discussion

The parties agree that Illinois law applies. Under Illinois law, insurance policies are interpreted the same way as other contracts. *Nicor, Inc. v. Associated Elec. & Gas Ins. Serv. Ltd.*, 223 Ill.2d 407, 416 (Ill. 2006). A court must "construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Nicor*, 223 Ill.2d at 416. Clear and unambiguous provisions are applied as written, and words are given their plain meaning. *Id.* A policy is ambiguous only if it is "susceptible to more than one reasonable interpretation," not merely because "the parties can suggest creative possibilities for its meaning." *Nicor*, 223 Ill.2d at 417.

Under Illinois law, an insurer's duty to defend "is determined by comparing the allegations in the underlying complaint to the relevant provisions of the insurance policy." *Dixon Distributing Co. v. Hanover Ins. Co.*, 641 N.E.2d 395, 398 (Ill. 1994). If the complaint alleges facts that fall within (or potentially within) the policy's coverage, the insurer has a duty to defend the insured in the lawsuit. *Dixon*, 641 N.E.2d at 398.

In this case, the parties disagree about the meaning of the Additional Insured Endorsement. In the simplest terms, the parties disagree about whether the Additional Insured Endorsement can be interpreted to mean that ATTIC must defend Allied for claims of Allied's own negligence (as Morris has alleged) or whether ATTIC must defend Allied only for claims arising out of System Transport's negligence (which Morris has not alleged).

Allied argues that the endorsement requires ATTIC to defend Allied for claims of Allied's own negligence. Allied bases its argument on the first sentence of the Additional Insured Endorsement, which says, "The above named Additional Insured(s) are included as insureds to the extent of the terms, conditions and exclusions of the applicable policy issued by ATTIC, RRG to the Named Insured and only to the extent the Additional Insured(s) are liable to others (and only to the extent of the actual liability) for the conduct of *an insured* under the applicable policy." (Emphasis added). Allied's argument is that the first part of the sentence makes Allied an insured (by saying "above named Additional Insured(s) are included as insureds") so that by the time one reads the second part of the sentence (which restricts the coverage to "conduct of an insured") Allied already is one. Thus, Allied's argument goes, the endorsement means ATTIC must defend Allied for its own negligence. In support of its argument, Allied cites several cases that say the use of the phrase "an insured" means "any insured." *Transamerica Ins. Co. v. South*, 125 F.3d 392, 399 (7th Cir. 1997) ("several cases have already established the distinction, under Illinois law, between the use of the indefinite article "a," an," or "any" to modify "insured" and the use of the definite article "the" to modify "the insured."); *Brile v. Estate of Brile*, 695 N.E.2d 1309, 1314 (Ill.App. 2nd Dist. 1998); *Allstate Ins. Co. v. Smiley*, 659 N.E.2d 1345, 1352 (Ill.App. 2nd Dist. 1996). These cases, however, are really about the difference between the use of the definite article ("the" insured) as compared to the indefinite article ("an" insured). That distinction is not at issue in this case.

The issue is whether "an insured" in the second part of the first sentence refers to Allied. ATTIC argues that it does not. ATTIC cites a number of cases where Additional Insured Endorsements were interpreted not to apply to the additional insured's negligence. *Pekin Ins. Co. v. Roszak/ADC LLC*, 931 N.E.2d 799, 804 (Ill.App. First Dist. 2010) ("We continue to agree with our earlier decisions finding that direct allegations of negligence against an additional insured do not fall within coverage granted 'only with respect to liability incurred solely as a result of some act or omission of the named insured and not for [the additional insured's] own independent negligence'"); *Pekin Ins. Co v. UPS*, 885 N.E.2d 386 (Ill.App. First Dist. 2008); *Pekin Ins. Co. v. Beu*, 876 N.E.2d 167 (Ill.App. First Dist. 2007). Ultimately, the cases cited by ATTIC do not help it, because, in those case, the courts were interpreting language different from the language at issue in this case. At best, those cases reflect a general understanding that the purpose of an Additional Insured Endorsement is to protect the additional insured from liability for the negligence of the named insured. But, it is the language of the particular endorsement at issue in this case that will determine whether that general understanding applies.

The language of the endorsement convinces this Court that ATTIC is not required to defend Allied for Allied's negligence. The meaning of the Additional Insured Endorsement becomes clear when one considers not just the first sentence of the endorsement but the second sentence as well. The Additional Insured Endorsement states:

> The above named Additional Insured(s) are included as insureds to the extent of the terms, conditions and exclusions of the applicable policy issued by ATTIC, RRG to the Named Insured and only to the extent the Additional Insured(s) are liable to others (and only to the extent of the actual liability) for the conduct of an insured under the applicable policy. The additional insured status of the above named Additional Insured(s) ceases when the Additional Insured(s) is no longer liable for the conduct of an insured or at the policy expiration date, whichever occurs first.

As ATTIC rightly points outs, the ATTIC Policy defines insured as "(1) the Named Insured(s) for any Covered Trucking Unit; (2) the employees or agents of the Named Insured(s) while using or maintaining any Covered Trucking Unit under the authority of the Named Insured(s); and (3) anyone else while using with the Named Insured's permission any Covered Trucking Unit." (ATTIC Policy at 11). When the endorsement says that the coverage exists only to the extent the Additional Insured are liable to others "for the conduct of an insured under the applicable policy," it is referring to insureds as defined in the policy, i.e., the Named Insured and employees, agents or any person using a Covered Truck with permission. This becomes obvious when one reads the second sentence, which says the coverage ceases "when the Additional Insured(s) is no longer liable for the conduct of an insured . . ." The Additional Insured will always be liable for its own conduct, but it could cease to be liable for System Transport's conduct if, for example, the contract between Tyco and System Transport were dissolved. The second sentence is superfluous if, in the Additional Insured Endorsement, "the conduct of an insured" included the conduct of the Additional Insured, because the Additional Insured will always be liable for its own conduct. The only interpretation that gives meaning to the entire Additional Insured Endorsement is the interpretation that "the conduct of an insured" means the conduct of the Named Insured and their employees, agents or anyone with permission to drive a Covered Truck. Accordingly, Allied, as an Additional Insured, is covered only to the extent it is liable for the Conduct of System Transport or its employees, agents or anyone with permission to drive a Covered Truck. Allied is not covered for its own negligence.

For these reasons, ATTIC has shown that it is entitled to judgment as a matter of law on its claim for a declaration that it does not have a duty to defend Allied in the case of *Morris v. Allied Tube & Conduit Corp.*

## IV.    Conclusion

For the reasons set forth above, the Court grants ATTIC's motion for judgment on the pleadings and denies Allied's motion for judgment on the pleadings. The Court hereby declares that, pursuant to policy ATTSTJ106, ATTIC has no duty to defend Allied in the case of *Terry Morris v. Allied Tube & Conduit Corp.*, Case No. 08 L 450 at the Circuit Court of Cook County.

ENTER:

George M. Marovich
United States District Judge

DATED:  November 23, 2011